Case Number 20-5170 Ryan Woodcock, et al. v. Correct Care Solutions LLC, et al. All arguments not to exceed 15 minutes per side. Mr. Aaron Bentley for the appellants. Good afternoon. Good afternoon. May it please the court. My name is Aaron Bentley. I represent the plaintiffs and appellants in this appeal and I've reserved three minutes for rebuttal. Very well. I represent, your honors, all hepatitis C infected people who are incarcerated by the Kentucky Department of Corrections. We are respectfully asking that the court reverse the district court's grant of summary judgment for these three primary reasons. First, it's undisputed that chronic hepatitis C is an objectively serious medical need and that any clients are not receiving direct acting antivirals or DAAs, which are the only available effective treatment for chronic hepatitis C. And third, the defendants have provided no medical justification for their conscious choice to withhold treatment from our clients. The most important thing about how chronic hepatitis C works for the purposes of our discussion today is that once someone develops chronic hepatitis C, they are on an unstoppable march toward cirrhosis of the liver. And once they develop cirrhosis of the liver, that condition itself is incurable. You may have your hepatitis C cured later, but you will always have the symptoms of cirrhosis and the increased risk of liver cancer, of liver failure. And also importantly, the symptoms of hepatitis C are not necessarily tied to the extent of liver scarring, which is how the disease works. Your liver gets progressively more scarred over some period of time, although we cannot predict that period of time for each individual patient. But there's no dispute that injury is caused by a delay in the handout that was provided with the newer policy that the defendants recently filed. It says, quote, if I don't treat hepatitis C, my liver disease can get worse. I think everybody agrees that there is injury that's caused with a delay. And the record shows no dispute that DAAs are the only medical treatment for this condition. The position that the defendants have taken in this appeal is that monitoring blood tests is medical treatment. Now, importantly, no defendant testified to that. The expert that the defendants hired did not offer that opinion. But the legal argument has been made that monitoring is enough to constitute medical treatment. Unfortunately, the trial court accepted that argument, despite the lack of evidence in the record, and granted summary judgment in part on that issue, despite this court's decision in Blackmore v. Kalamazoo County that if a patient has an objectively serious medical need and the prison officials provide no treatment, that constitutes deliberate indifference, unless you can provide a medical justification. The court's decisions in Dara v. Krischer and Reinhart v. Scutt talk about the ability, if you've actually exercised some medical judgment, to choose not to provide medical treatment in those circumstances. The Reinhart case specifically, there's a type of procedure called a TIPS procedure that was supposed to prevent esophageal bleeding. The doctors at the that the TIPS procedure can cause brain disease and may not ultimately help with your problem. So in that decision, weighing those pluses and minuses, they decided not to do it. There's no evidence in this case that the defendants ever weighed the pluses of DAAs, which are it's a cure for 95% of people, versus the minuses, which are essentially no side effects whatsoever, and decided that our clients would simply be better off without DAAs. So counsel, is it your position that all prisoners that are diagnosed with hepatitis C are entitled to the DAAs? Once that condition becomes chronic, yes, your honor. Becomes chronic, and how do you define chronic then? Chronic HCV is defined as if you haven't cleared the virus on your own within the first 6 to 12 months after infection. Okay, so your position that everyone that's had it more than 6 to 12 months is entitled to the DAAs? Yes. Otherwise there's deliberate indifference? Yes, your honor. Okay, all right. And the court in this case accepted that there was an individualized medical judgment about not providing our clients DAAs, and that's based on a policy, which I think is important to the question that you just asked Judge Griffin, which is about their justification is we're only going to treat people when their liver disease gets really bad. And the way that they do that is to use what's called an APRI score, an APRI score that compares the AST, an enzyme that your liver emits, compares that to what a healthy person emits essentially. And they require a certain score, a 2.0, to make you the highest consideration for treatment. And what this is supposed to measure, what they claim it measures, is how advanced that liver scarring is. Because Judge Griffin, when you first get chronic HCV, you might not have liver scarring yet, but it progresses over time, that unstoppable march towards cirrhosis that I talked about. Now at this 2.0 level, we know based on the factual record in this case, that that score tells you two things. One, if you have a 2.0 or higher, you have cirrhosis of the liver, period. An incurable condition that is always going to have you at an increased risk for liver cancer and liver failure. But over half of the people who score below a 2.0 will also already have cirrhosis of the liver. They will also already have an incurable condition regardless of whether their HCV is treated in the future. So what the defendant's policy actually does is brings up someone with chronic hepatitis C and flips a coin to decide whether they're going to get treatment. That's not based in medicine. It's not scientific and therefore it's not an individualized medical judgment. The claim that they're really making is that it costs too much, that it would simply cost too much to treat everyone. However, first of all, Dr. Kimmon, who is the correct care services or correct care solutions doctor who makes all the decisions about who gets treated in KDOC, testified this way. He was asked this question, does cost or expense play any role in whether or not an inmate gets antiviral treatment? Dr. Kimmon, no. And that was the end of the discussion. So Dr. Kimmon says cost plays no role. No other defendant testified that cost does play a role. But again, the legal argument that's been made, which is not in the factual record, is that cost is the reason they can't treat our clients. However, cost is not a medical justification. I talked about how DARA and Reinhart require a medical justification to refuse treatment for an objectively serious medical condition. Cost isn't one of those. There's no evidence in the record that it is. But it's also simply not a justification. All practical purposes point to the fact that the KDOC would actually save money by treating everyone as quickly as possible. In the recent opinion of Atkins versus Parker, which I understand is a petition for certiorari has been filed in that case. But in Judge Gilman's dissent, he cited a Federal Bureau of Prisons study that showed that if they treated 100 patients with chronic hepatitis C, it would cost about a million dollars. But if they fail to treat those same patients, it could ultimately cost them over 15 million dollars. So if you extrapolate that out to the numbers that we're looking at in Kentucky, which at time of summary judgment, the defendants had identified 1,670 chronically infected inmates, then we're talking about about 16.7 million to treat them versus over 300 million not to treat them if we go by the FBOP study. And the amicus brief filed in this case cited multiple other studies showing hundreds of millions of dollars in savings that are available. Yeah. Counsel, you cite Judge Gilman's dissent, but doesn't the majority opinion in Atkins go against your position, at least as to the subjective component? It does, Your Honor. And I'm citing Judge Gilman's dissent specifically for that FBOP study, which I don't think was necessary. I know Atkins came down after the district court ruled, and I think after your briefs were filed in this case. So do you want to address the majority in Atkins, which is precedentially binding on us and tell us why we shouldn't? I know the facts are a little different. They had a jury trial there, but tell us why we shouldn't file Atkins. Absolutely, Your Honor. Well, first of all, the decision is non-final since the petition for certiorari has been filed. Well, is it not final on us? I think it's a published decision. I think this panel has to file it until it's overruled by the en banc court or by the Supreme Court. I don't think certiorari affects our obligation to file it. I mean, if you know something in our rules that says that we don't, I guess I'd like to know that, but that's not my understanding. I'll leave that to Your Honors to decide, certainly. But regardless, the Atkins case is much different from this case. Most importantly, as Your Honor pointed out, they got a full four-day trial with expert testimony, client testimony, and so the judge could judge the credibility of the witnesses and give a decision on the merits. We did not get that. We have been thrown out on summary judgment when the court was supposed to look at the facts in a light most favorable to us, but the facts themselves are very different. Let me ask you, Counselor, wasn't that decision based upon the reasons stated by the defendant as to why they could not provide this medical care? And so the question becomes, what reasonable statements has your defendant made supporting its decisions not to provide the provision of health care coverage? Is that not correct? That is correct, Judge Strange. In that case, Dr. Williams, the Tennessee doctor, repeatedly sought budget increases for hepatitis C treatment but simply did not have enough money, according to the factual record in that case. I can't say whether that's true or not. In this case, the only evidence... Well, if money is not a consideration, I mean, you were just arguing that if we look at money, it actually cuts in favor of using the drugs. So Atkins doesn't make any sense if we're looking at the money part of it, right? I agree, Your Honor, that money should not be a consideration in any way. My point is, in Atkins... And the question becomes, what was the basis of the decision not to provide any medical treatment? And your argument is what? It appears to me from my reading of Atkins that it was primarily a cost-based decision, which my opinion is that... I'm not talking about Atkins, I'm talking about this case. Oh, yes. What rationale has been offered? In the factual record, there is no rationale. The only rationale... This cost argument has come up in legal arguments, but the rationale is simply that they use these APRI scores, the coin flip that I talked about, and then consider people according to those scores. However, if you look at the spreadsheets that we provided, even the people that they identified as having the most advanced liver disease, over a third of them had not been treated when summary judgment occurred in this case. So, I see my time is expiring. I'll reserve for rebuttal. Thank you. All right. Any further questions, Judge Batchelder? No. Judge Gratchen? Okay. Let's hear from the defendants. May it please the court. My name is Edward Bayless. I represent LaDonna Thompson, Rodney Ballard, Cookie Cruz, and Denise Burkett. And I will be using the first five minutes of the time that's available to the appellees. My portion of the argument focuses on the DOC structure and the operations. Mr. Sharp represents Dr. Kamen and some of the people that would be more familiar with some of the medical issues. Now, just as an initial matter, LaDonna Thompson and Rodney Ballard are former corrections commissioners here. They had nothing to do with providing any medical care or making any medical decisions. As far as I am able to tell, the only reason they were included was they happened to occupy the official position of any involvement in the development of the hepatitis C protocol. Cookie Cruz was, at the time this suit was filed, the director of health services for the Kentucky Department of Corrections. She has since accepted the position of commissioner of the Department of Corrections, and that's the position she currently holds. And she was assisted by defendant Denise Burkett. Now, Ms. Burkett is an advanced practice registered nurse. She, however, was not providing any direct patient care. She was providing her expertise in advising Ms. Cruz, who doesn't have any medical training herself. And Ms. Burkett played the key role in developing the DOC policy. And the DOC policy that has been in effect for many years, has recently been revised, is not something that was simply drawn from the air by Ms. Burkett and Ms. Cruz. They look to the policies that are being used by the Federal Bureau of Prisons. I'm looking at Ms. Burkett's testimony, and her testimony as to why she chose to deviate from the FBOP plan was that she found it cumbersome and intimidating. And she amended it so that your plan would be easy to follow. Well, what she drew out of the Federal Bureau of Prison plan were the things that were applicable about how you were going to do the scoring and the ranking as far as the liver scores that have been referred to and things like that. The actual Federal Bureau of Prisons plan is a very long, detailed document. What she has gotten out of is the clinical elements that she felt needed to be in the plan in order to inform the decisions about how... I thought she testified that she was not familiar with the AASLD guidelines, or their substance. If that's what she testified to, that has been several years ago and actually predates my involvement in the case. My understanding is that part of her testimony was actually an incorrect statement about the to the AASLD statements that it does not increase a patient's overall chances of being cured. My understanding is she's not an expert, and she said she did not consult with an expert. Why couldn't a reasonable jury find her failure to educate herself on the science and the prevailing guidelines before developing a plan was willful ignorance or recklessness? Well, I think when she looked to the Federal Bureau of Prisons plan, and to be honest, I'm not sure whether that's in the record or not, that plan actually was put on the liver disease panels website as an example of how to go about doing that. I think she was relying on somebody rather than this liver disease panel. She was looking to the Bureau of Prisons because she viewed them as having greater expertise in developing a plan that would deal with the specific issues involved in corrections that were not going to be addressed by the liver disease board. Even though she found it cumbersome and intimidating and decided to make her plan easy to follow? Well, I think she has to make the plan easy to follow for the people that are going to be implemented. Isn't that a jury question? Why is that not a jury question? Well, I think that that relying on the Federal Bureau of Prisons plan was a reasonable thing to do under the circumstances. And amending it to make it easier to follow, why doesn't that throw it into a question for a jury? Because I think the provisions that are taken in the plan are the relevant provisions. I don't think that it's deliberate indifference if we simply don't adopt the plan by the Federal Bureau of Prisons word for word. Because many of the provisions that are going to be in there aren't applicable to our system. The Federal Bureau of Prisons is... And who decides that? Well, I think the court's able to decide that just as a matter of law as to whether that it's reasonable to rely on the Federal Bureau of Prisons in developing these sorts of policies. Because there's certainly a group that... And you expect judges to then also say whether an amendment was reasonable or not? I'm struggling with that. I surely don't know whether the amendment was right or wrong. I'm not in a position to make that determination. Well, I think that when she is having to make the plan, I think the Adkins decision resolves that question. Because she is put in a position of having to do the best she can with the materials that she has available to her. Now, that's not necessarily being reckless. And the standard is not whether she could have done better. The question is whether she was unreasonable in the circumstances in which she found herself. Thank you. All right. Co-counsel? Excuse me. May it please the court. My name is William Sharp. I represent Dr. Kamen in Correct Care Solutions, now known as WellPath in this matter. In addition to addressing any questions the court may have, I will devote my 10 minutes to two issues. First, as has been noted during the pendency of this appeal and after the parties completed their briefing, the Kentucky Department of Corrections revised its hepatitis treatment protocol in late 2020. As adopted, the 2020 plan renders those individual and class claims seeking prospective injunctive relief that relate to the changes moot. Second, irrespective of mootness, the court should amend claims either because, A, the district court properly applied this court's precedents in finding that the 2018 HCV plan did afford medical treatment short of curative treatment, and that no reasonable jury could conclude that the defendant's actions in adopting and implementing that policy was grossly incompetent, inadequate, or excessive, so as to shock the conscience or be intolerable to fundamental fairness. Alternatively, the district court's award of summary judgment should be affirmed because no reasonable jury could conclude that the defendants, by adopting and implementing a policy based largely on that which was prepared by the Federal Bureau of Prisons, acted with the requisite culpable mental state to establish an Eighth Amendment violation. First, with respect to mootness, it bears noting that the appellants have, in their operative complaint, asked for prospective injunctive relief, both individual and class, seeking that the defendants meet the standard of care and the diagnosis and treatment of HCV-infected inmates, or, at a minimum, adopt in toto and comply with the FBOP guidelines. That was filed January 15, 2019. The most recent, the 2020 revisions, do so in two key respects. Specifically, appellants' brief before the court identified five differences between the then-operative 2018 plan... cessation of unlawful conduct. It will only be mooted when subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur. Supreme Court case, Friends of the Earth. I don't see anything in your submission that there's any evidence that would satisfy that standard. Where in your submission have you made a commitment to make these changes permanent and retracted your position that the prior conduct was constitutional? Thank you, Your Honor. First, we were capped at 350 words in our notice of supplemental authority, so there was a finite amount of space in which to articulate what we needed to. In terms of the analysis, the court is correct, and it's viewed under a totality of the analysis. There's ample evidence in this case to establish just that question. First, during the pendency of this case, which has been more than five years now, the Kentucky Department of Corrections has amended its HVC policy at least four times. August 2015, March 2017, August 2018, December 2020. In each of those instances, there is no evidence to suggest that it was done for litigation reasons, and there's nothing to indicate that any of the changes that were adopted in each of those revisions were gone back on. You take the position that throughout those alterations, the activity of the prison was constitutional, correct? Yes, Your Honor. Well, you know, when you have a case that the charge is voluntary cessation of unlawful conduct, then you have to show that the case is mooted because the allegedly wrongful, you don't have to prove it, but the allegedly wrongful behavior could not reasonably be expected to occur, and I'm lost as to how what you've done, now don't get me wrong, it is good that you are making changes, but I just don't see how they move the case. Your Honor, if you look at the affidavit that accompanied the submission of Commissioner Cruz, she noted in there that the Kentucky Department of Corrections is presently undergoing a solicitation of bids process for contracting its health care services agency-wide at its adult facilities. In there, she also notes that one of the changes, the opt-out, the switching the HCV plan to an opt-out basis, is part and the bidding process so that prospective contractors would factor that into the process. We're talking about the possibility of resumption, and I know you cite a Fifth Circuit case that says that, oh, voluntary cessation is evidence of good faith, but our Northland Family Planning Clinic makes clear that violation, that ceasing violation in response to litigation actually shows a greater likelihood that it could be resumed. So, all I'm getting to is the mootness issue, and I know you have a limited amount of time, but I'm not sure that you qualify. Could you go ahead and address the substantive portions of your argument? Just to clean that up, Your Honor, first off, the District Court found and is on review in favor of the Appellees. It's our contention that the previous plan wasn't unlawful, but the march goes forward in terms of making revisions and trying to make improvements. In terms of the Eighth Amendment claims, Your Honor, we think the District Court was correct, both on the objective and subjective components. As to the former, the Eleventh Circuit's recent decision in Hoffer is certainly instructive. Medical treatment short of curative care is, in fact, medical treatment or can be in certain circumstances. In others, it might not meet the constitutional minimum. But in Hoffer, as in Adkins, comparable or substantially similar HCV treatment plans were reviewed and upheld because there was a recognition that the plans accounted for identification, diagnosis, treatment of comorbidities, testing, monitoring and management, and patient education, all of which are present or were present in the 2018 plan, and as well as the 2020 plan. Can you agree with the Adkins case that there's not a question that HCV is a serious medical condition objectively? Yes, Your Honor, that's correct. You're on the subjective prong now. Actually, no. The objective prong, Your Honor, as the District Court correctly found, even though there's a serious medical need, there was medical treatment provided. So it really boils down to a question of was the medical treatment that was provided so unreasonable as to shock the conscious or be intolerable to notions of fundamental fairness. And that's why appellees prevailed below an objective, and while we maintain that was the correct decision. And your opposing counsel argues that monitoring is simply not medical treatment, correct? That's appellate's position, that's correct. And doesn't the evidence support the claim that what was going on in the prisons was simply monitoring? I disagree, Your Honor. The defendant's expert, Dr. Schicker, analyzed the plan, compared it to the Federal Bureau of Prisons plan, found that the Federal Bureau of Prisons plan met the standard of care as did the then operative KDOC plan. I would also note that in this evolving scene of HCV treatment, Plaintiff Woodcock, who is one of the plaintiffs who brought this case, had argued in prior related litigation through an expert, Dr. Talal, that the Federal Bureau of Prisons policy was the then operative FBOP policy, was in fact the standard of care. New case, new expert, Dr. Truskin concludes that the FBO policy was not with the standard of care. What we ostensibly have, Your Honor, is a disagreement of medical opinion, which is not actionable under the Eighth Amendment. That's why the district court correctly awarded summary judgment, where it need not be the gold standard of medical care, but certainly reasonable medical professionals agree, you know, where there is a number of patients in need of treatment and decisions have to be made about whom to treat first, there has to be a way to do that. And even the ASLD that Your Honor referenced earlier recognizes that in its guidelines. Okay, counsel, can you address the Atkins case and how you think it impacts this case? Your Honor, Atkins was at a bench trial. You know, there are certainly ways in which it can be distinguished. But in short, the Atkins court recognized that there's a certain amount of latitude within the Eighth Amendment to recognize care along a continuum. On the one end is curative care, which is what appellates seek in this case. At the moment, HCV can progress to their the Eighth Amendment is going to allow for health care professionals in the prison context to make decisions about how to deliver care under the unique circumstances of trying to administer prison health care. The point of argument is, is that unless curative care is administered, there is no care medical care at all. How did Atkins address that, if at all? Your Honor, I believe the Atkins court found that the HCV plan at issue there, like here, which provided for diagnosis, monitoring, management of the condition and comorbidities was in fact medical care. Medical care, even though it wasn't always curative. I mean, the argument here is if it doesn't cure, it's not medical care. And that's didn't Atkins conclude that based on the cost, that was the factor and the reason put forward by the defendants, that that was what enabled it to not have engaged in deliberate indifference. My understanding is that that's the core Atkins, but I don't see that being stated by the defendants in this case. Have the defendants raised a cost? I know you argue it in your briefs. What evidentiary basis do you have from the defendants in this case that shows that that was the basis of how they chose to render care? Your Honor, I don't. Dr. Dr. Kamen was the employee of correct care solutions and correct care. The policy that we're talking about is that Kentucky Department of Corrections policy insofar as internal decisions about why to go to the FBOP policy as opposed to drafting one from scratch. I wouldn't be able to My question is whether what was the reason offered by these defendants in defense of the choice of the medical care or monitoring that they gave? In Atkins, it was a cost based analysis. I thought that the defendants in this case expressly denied that cost was a consideration. At Dr. Kamen's level, he did. He's the one ostensibly managing the HCV plan in terms of the adoption of the plan itself. It was the initial plan predated Dr. Kamen, correct care solutions, and it has gone through multiple revisions over the years in light of the evolving nature of the medications available to HCV. In terms of like a statement in the record that this is why we adopted the FBOB policy as opposed to drafting their own, I cannot point the court to one. Or an explanation as to why they deviated from that plan, correct? There's no explanation for that. Thank you. Okay, any further questions at this time, Judge Batchelder? No. Okay, Judge Grant? No, thank you. Okay, three minutes rebuttal. Thank you, Judge Griffin. First of all, I'd just like to highlight that Mr. Sharp's argument confirmed that there is nothing in the record that monitoring constitutes medical treatment. That may have very well been in the record in Atkins. It is not in the record in this case. Second, isn't that a legal conclusion as opposed to a factual one? No, Your Honor, it's not. The defendant's hired an expert who could have opined that monitoring constitutes medical treatment. That's a medical conclusion to be made and a jury should ultimately decide whether it believes that monitoring constitutes medical treatment. It sounds like a legal conclusion to me, but all right, I'll look at it. Do you have any authority that that's a or Reinhart? They are looking at factual issues regarding whether something constituted medical treatment. And those are cases in which it was based on the medical expert's conclusions, not based on the judge's conclusions about what those things constituted. Also, there was, as Judge Stranch asked, no rationale was provided. The only statement is Dr. Kamen's cost doesn't play a role. I want to talk about Atkins quickly because it's not just what Kentucky has provided is so far below what Tennessee provided and what the court saw in Atkins. There they had a committee, including an infectious disease specialist that looked at every single person who tested positive. In this case, you have local institutional staff who treat or I'm sorry, who test people. And then only when their A.P.R.I. score reaches a certain level, do they even tell Dr. Kamen that this person exists. In Tennessee, when you test positive, you get a full battery of tests to determine liver scarring. A.P.R.I. scores do not determine liver scarring. That's what's happening in Kentucky. And as Judge Stranch pointed out, neither Dr. Kamen nor Nurse Burkett are infectious disease specialists. The record indicates that no one within Correct Care Solutions or the KDOC is an infectious disease specialist, and they never consulted with anyone who is an infectious disease specialist. So certainly those arguments are that the treatment could have been better, but that's not what the Eighth Amendment requires. And the Eighth Amendment prohibits cruel and unusual punishment. And here, to me, they are getting treated, they're getting monitored, but you're just saying it's not effective and they could do it much better. But I'm not sure that's an Eighth Amendment violation at all. I disagree, Your Honor. I'm not arguing that the treatment could have been better. I'm arguing they didn't receive any treatment, period. What I'm arguing is that in Atkins, at least the policy that this court approved of was much better than what our clients received. You're arguing it was better treatment. I mean, here they're identifying the Hepatitis C individuals, they're monitoring them, they're doing everything except giving them the curative drugs, I think. Here's the primary difference, Judge Griffin. What happens in Tennessee means they can actually identify what level of liver scarring the patient has. In Kentucky, they literally are flipping a coin to decide who gets considered for treatment. It's outside of the scope of medicine, therefore it's not a medical... I thought your position was everybody that had the diagnosis more than six months is entitled to the DAAs. So I'm not sure the scale would make much difference to you, would it? I mean, the scale shows whether you have cirrhosis or not, but your argument is everybody that has Hepatitis C for more than six months is entitled to the DAAs, I think, irrespective of cirrhosis, right? Yes, Your Honor, that is my... The testing is, or the scaling of the test, whatever it is, from zero to 20, I don't know how that comes into your argument, that's all. Here's where it comes in. Because it would still not be sufficient under your position. Here's where it comes in, Judge Griffin. Their rationale, their argument is we're going to test people with the most advanced liver disease. They don't know who has the most advanced liver disease. They are doing something that has no scientific basis. They have to provide a medical judgment for withholding treatment, and they are not using medicine to determine who gets treated. So on the factual record, they have not provided medical judgment or any factual evidence that they ever provided any treatment. So summary judgment is inappropriate. Why is that relevant to your claim when your claim is it doesn't matter, none of this stuff matters, if what you are saying is the moment somebody goes from having an acute to a chronic HCV, Hepatitis C virus condition, that's the moment at which they're entitled to the antiviral drug. And if they don't get it, then deliberate indifference is being displayed. That's correct, Judge Batchelder. The important part is that it goes to their state of mind and their conscious decision not to treat our clients, not to avail themselves of the resources and educate themselves of the right way to care for this disease. They don't know because they haven't consulted with anyone who does know. Okay, you just said the right way to treat for the disease. That's the problem. You're contesting what the right way is to treat for the disease, and I'm not sure that's what standard of deliberate indifference is. Well, there's one right way to treat Hepatitis C, and it's to provide DAAs. I know, but it doesn't mean there's a violation of the Eighth Amendment if you don't do it the right way, that's all. It does when there's only one option. It does, okay. Well, that's... Well, Judge Griffin, Dara v. Krischer speaks to this exact issue because the question in that case was, can we provide this treatment that we know is ineffective because it's cheaper? And the court said, no, if you know it's ineffective, if you know it doesn't alleviate or cure the disease, then it's deliberate indifference to not provide the more effective treatment, even if it's more expensive. So are you claiming that never is the antiviral treatment administered or just it isn't administered when you think it should be? None of our clients, none of the class has received antiviral treatment, not one of them. So it's not that it hasn't been provided on time, it's that it hasn't been provided at all. Okay, I see you're out of time. Any further questions, Judge Batchelder? No. Judge Scratch? No. All right, counsel, thank you very much for your argument. We'll give the case careful consideration and the case is under submission. It's my understanding that concludes the oral argument docket for this afternoon. You may adjourn the court. This court is now adjourned.